IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:09-CV-448-F

| | |
|---|---|
| MICHAEL J. GIBBONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | **and** |
| CHAS. H. SELLS, INC. d/b/a WSP SELLS, ) | **ORDER** |
| ) | |
| Defendant. ) | |

This case comes before the court on three motions: a motion (D.E. 13) by defendant Chas. H. Sells, Inc. ("defendant") to dismiss the amended complaint (D.E. 11), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; a motion (D.E. 20) by defendant to stay discovery pending resolution of the dismissal motion; and a motion (D.E. 26) by plaintiff Michael J. Gibbons ("plaintiff") to compel discovery. The dismissal motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) (*see* D.E. 19) and the other motions pursuant to 28 U.S.C. § 636(b)(1)(A) (*see* Minute Entry dated 21 May 2010; 1st Minute Entry dated 6 Oct. 2010), and have been fully briefed.[1] For the reasons stated below, it will be recommended that defendant's dismissal motion be denied, and it will be ordered that defendant's motion to stay be denied in part as moot and in part on the merits and that plaintiff's motion to compel be denied.

---

[1] Defendant's dismissal motion is supported by a memorandum (D.E. 14) and an exhibit (D.E. 14-1). Plaintiff filed a memorandum in opposition (D.E. 16).

Defendant's motion to stay is supported by a memorandum (D.E. 21) with an exhibit (D.E. 21-1). Plaintiff filed a memorandum in opposition (D.E. 22) with several exhibits (D.E. 22-1 through 22-4).

Plaintiff did not file a separate memorandum in support of his motion to compel, but included argument in it. The motion is supported by several exhibits (D.E. 26-1 to -5). Defendant filed a memorandum in opposition (D.E. 27) with copies of cases cited therein as exhibits (D.E. 27-1 to -5).

## BACKGROUND

### I. PROCEDURAL HISTORY

Plaintiff filed this action on or about 3 September 2009 in Wake County Superior Court. (*See* Compl. (D.E. 1-1)). The original complaint named as defendants Chas. H. Sells, Inc. and WSP Group, PLC d/b/a WSP Sells. (*Id.* ¶¶ 2, 3). On 13 October 2009, defendants removed the case to this court pursuant to this court's diversity jurisdiction under 28 U.S.C. § 1332. (*See* Notice of Removal (D.E. 1) ¶ 3). On 10 March 2010, plaintiff filed a notice of voluntary dismissal of defendant WSP Group, PLC (D.E. 10) and an amended complaint (D.E. 11), with exhibits, naming the current defendant as the sole defendant.[2] The instant motions were subsequently filed.

### II. PLAINTIFF'S ALLEGATIONS[3]

In the amended complaint, plaintiff alleges as follows: Plaintiff, a citizen and resident of Wake County, is a landscape architect licensed as such under the North Carolina landscape architect licensure statute, chapter 89A of the North Carolina General Statutes ("chapter 89A"). (Am. Compl. ¶ 4). Defendant is a New York corporation doing business throughout the United States, including North Carolina. (*Id.* ¶ 2). It is engaged in the practice of landscape architect and engineering services in association with land developers. (*Id.* ¶ 5).

Plaintiff began working for defendant in its Cary office in June 2006 as a landscape architect. (*Id.* ¶ 4). Defendant later established the Sells Design Studio ("Design Studio") in its Cary office. (*Id.* ¶ 6). The Design Studio performed the preliminary work of land development (*id.* ¶ 7),

---

[2] Based on these filings, the court denied as moot two then-pending motions to dismiss the original complaint. (*See* Order (D.E. 12) 1).

[3] The summary of the allegations reflects the principles set out in the section below that the allegations must be viewed favorably toward plaintiff.

2

including the preparation of due diligence reports for clients on the feasability of particular projects (*id.* ¶ 8) and meeting with clients and and governmental authorities (*id.* ¶ 9). From May 2007 on, the director of the Design Studio was Beth Lewis, who holds no professional license. (*Id.* ¶ 6).

Nevertheless, the work performed by the Design Studio included landscape architectural services subject to chapter 89A, and engineering and land surveying services subject to the North Carolina licensure statute for engineers and land surveyors, chapter 89C of the North Carolina General Statutes ("chapter 89C"). Chapter 89A requires that "[a]ll landscape architecture performed by a firm, partnership, or corporation shall be under the direct supervision of an individual who is registered under this Chapter." N.C. Gen. Stat. ch. 89A-2(a1); *accord* 21 N.C. Admin. Code § 26.0209(6) (setting out specific requirements for supervision); (*see* Am. Compl. ¶ 17). Similarly, chapter 89C requires that "all engineering or land surveying work done by the corporation or business be performed by or under the responsible charge of individual registrants," meaning that such work must be under the "[d]irect control or personal supervision" of such registrants. N.C. Gen. Stat. § 89C-3(10), -24; *accord* 21 N.C. Admin. Code § 56.0701(c)(3) (setting out specific requirements for direct supervisory control); (*see* Am. Compl. ¶ 22).

In violation of these statutes, defendant did landscape architecture, and engineering and land surveying work that was not performed by or under the direct supervision of the appropriate licensed professional, in violation of chapters 89A and 89C. (Am. Compl. ¶¶ 27, 28, 30). Projects in which such violations occurred included one for the Landing at Lake Michael residential subdivision in Mebane on behalf of LML Development, Inc., one for the Northeast Creek Apartments on behalf of Trammell Crow Residential, and one for the Isabella Cannon Neighborhood Park on behalf of the

City of Raleigh.[4] (*Id.* ¶¶ 32, 41, 42, 54-57, Ex. B (D.E. 11-1 at 7-8), Ex. D (D.E. 11-1 at p. 11), Ex. F (D.E. 11-1 at pp. 13-26)). In addition to these violations, two unlicensed employees violated chapter 89A by misrepresenting themselves to the public as licensed landscape architects by placing the designation "ALSA," for American Society of Landscape Architects, after their names. (Am. Compl. ¶¶ 54 & n.2, 57).

As a result of the unsupervised work of unlicensed personnel, defendant's clients received unusable and unprofessional work, experienced project delays, and were overcharged. (*Id.* ¶¶ 31, 37, 42, 66). They were also defrauded because they believed they were receiving the work product of licensed professionals. (*Id.* ¶ 66). Other project participants depending on defendant's work were similarly harmed. (*See id.* ¶ 42).

Between January and May 2008, plaintiff on several occasions complained to various others at defendant, including Lewis and two engineers (*i.e.*, Ross Massey and Don Sever), that defendant was violating chapters 89A and 89C by not properly supervising unlicensed personnel, but the purported deficiencies were not resolved. (*Id.* ¶¶ 28 (second), 34, 36, 38, 43, 44). On 12 May 2008, plaintiff called the North Carolina Board of Landscape Architects ("Board") and set up a meeting with the attorney for the Board on 16 May 2008. (*Id.* 45). The next day, he told the two engineers and defendant's President, Steve Smith, that he believed he was required to report the violations of chapter 89A to the Board, and the following day he told Steve Smith of the scheduled meeting with the Board's attorney. (*Id.* ¶¶ 46, 47).

---

[4] Although defendant performed work on the first two projects during plaintiff's employment with defendant (*see* Am. Compl. ¶¶ 32, 41), defendant's work on the third project, for the park, appears to postdate plaintiff's termination by defendant in May 2008 (*see* Am. Compl. ¶¶ 50, 54). The park project was, however, addressed in the complaint proceeding plaintiff initiated, as discussed below. (*See id.* ¶¶ 52-56 & Ex. F (D.E. 11-1 at pp. 13-26)).

On 15 May 2008, plaintiff had a conference call with Steve Smith and defendant's general counsel, Mark Smith, Steve Smith's brother. (*Id.* ¶ 48). Although Steve Smith reassured plaintiff that defendant was not violating chapter 89A, plaintiff emailed him time sheets and bills plaintiff believed showed violations of chapters 89A and 89C. (*Id.* ¶ 48). Plaintiff also told Steve Smith that unless he confirmed that all work done in the Design Studio was being supervised by a licensed professional he would have to report the violations. (*Id.* ¶ 49). On 16 May 2008, immediately prior to his meeting with the Board's attorney, defendant terminated plaintiff for "lack of work" even though defendant had ample work that it had assigned to him. (*Id.* ¶ 50).

In or about June 2008, the Board commenced an investigation of the Design Studio based on a complaint from plaintiff. (*Id.* ¶ 52). In April 2009, the Board issued a self-denominated "letter of warning" to defendant. (Board Ltr. (D.E. 14-1)). In it, the Board found that defendant had been tardy in license renewal and other licensing matters, and warned it to be timely in the future. (*Id.*).

In his amended complaint, plaintiff purports to assert a single cause of action, a claim for wrongful discharge in violation of public policy under North Carolina law. (*See* Am. Compl. ¶¶ 58-70). There are six exhibits to the amended complaint that are incorporated into it by reference.[5] Plaintiff seeks compensatory damages, punitive damages, costs, and attorney's fees as allowed by law. (*Id.* 16-17).

---

[5] A complete listing of the exhibits, several of which have already been referenced, is as follows: Ex. A: a 2007 news release from the American Planners Association website (*id.* at pp. 1-3) (*see* Am. Compl. ¶ 27); Ex. B: minutes of a 3 December 2007 meeting of the Mebane City Council regarding the Landing at Lake Michael project (D.E. 11-1 at pp. 4-8) (*see* Am. Compl. ¶ 32); Ex. C: an 11 July 2008 letter by Lewis (D.E. 11-1 at pp. 9-10) (*see* Am. Compl. ¶ 40); Ex. D: an 18 August 2008 email regarding the Northeast Creek Apartments project (D.E. 11-1 at 11 (*see* Am. Compl. ¶ 42); Ex. E: a 24 September 2008 letter by defendant's employee Kenneth R. Dodson (D.E. 11-1 at p. 12) (*see* Am. Compl. ¶ 53); and Ex. F: minutes of meetings of the Isabella Cannon Neighborhood Planning Committee (D.E. 11-1 at pp. 13-26) (*see* Am. Compl. ¶ 54).

# DEFENDANT'S MOTION TO DISMISS

## I. APPLICABLE LEGAL PRINCIPLES

### A. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Ordinarily, the complaint need contain simply "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *See Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (internal quotation marks omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiff alleges factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and shows more than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged complaint and view those allegations in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *see also Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268

(4th Cir. 2005) (court must accept as true all factual allegations of the complaint). All reasonable factual inferences from the allegations must be drawn in the plaintiff's favor. *Edwards*, 178 F.3d at 244. However, bare assertions of legal conclusions or formulaic recitations of the elements of a claim are not entitled to be assumed true. *Iqbal*, 129 S. Ct. at 1951.

While consideration of matters outside the pleadings generally converts a dismissal motion under Rule 12(b)(6) into one for summary judgment, *see* Fed. R. Civ. P. 12(d), in certain circumstances a court may consider documents outside the complaint without effecting such a conversion. These include instances in which the documents are expressly incorporated into the complaint or are official public records central to an asserted claim. *See Spain v. Virginia Com. Univ.*, No. 3:09cv266, 2009 WL 2461662, at *3 (E.D. Va. 11 Aug. 2009); *Beane v. Agape Mgmt. Servs., Inc.*, No. 3:08-3445-CMC-PJG, 2009 WL 2476629, at *6 (D.S.C. 11 Aug. 2009) (considering EEOC charge on motion to dismiss where charge was referred to in complaint and relied upon by plaintiff without converting motion to one for summary judgment). Under these principles, the six exhibits to the amended complaint and the single exhibit to the dismissal motion may properly be considered by the court without converting the dismissal motion to one for summary judgment, and the court has considered them.

B.  **Wrongful Discharge Cause of Action**

There is a strong presumption under North Carolina law that employment is at-will. *See, e.g., Franco v. Liposcience, Inc.*, 197 N.C. App. 59, 676 S.E.2d 500, 503 (2009); *Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 331-32, 493 S.E.2d 420, 422 (1997). "'As a general rule, an employee-at-will has no claim for relief for wrongful discharge . . . [because] [e]ither party to an employment-at-will contract can terminate the contract at will for no reason at all, or for an arbitrary

or irrational reason.'" *Combs v. City Elec. Supply Co.*, — N.C. App. —, 690 S.E.2d 719, 723 (2010) (quoting *Tompkins v. Allen*, 107 N. C. App. 620, 622, 421 S.E.2d 176, 178 (1992) (citations omitted)).

In the case of *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989), the North Carolina Supreme Court established the so-called public policy exception to this rule. The court ruled that, "'[W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy.'" *Id.* at 175, 381 S.E. 2d at 447 (alterations in original) (quoting *Sides v. Duke Univ.*, 74 N.C. App. 331, 342, 328 S.E. 2d 818, 826 (1985)). The court reasoned that "[a] different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent." *Id.*

The public policy exception is a narrow one. *Roberts v. First-Citizens Bank and Trust Co.*, 124 N.C. App. 713, 721, 478 S.E.2d 809, 814 (1996). Although the North Carolina courts have not adopted a listing of the specific actions to which it applies, they have recognized claims under the exception in only three basic circumstances: "'where the employee was discharged (1) for refusing to violate the law at the employer's request, (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy.'" *Combs*, 690 S.E. 2d at 723 (quoting *Ridenhour v. IBM Corp.*, 132 N.C. App. 563, 568-69, 512 S.E.2d 774, 778 (1999)). The courts have further delineated the limited types of public policy considerations that have been held sufficient to support a claim. "These narrow exceptions to the at-will employment doctrine 'have been grounded in considerations of public policy designed either to prohibit status-based

discrimination or to insure the integrity of the judicial process or the enforcement of the law.'" *Id.* (quoting *Kurtzman*, 347 N.C. at 333-34, 493 S.E.2d at 423) (emphasis omitted)

In addition, under the public policy exception, an employee claiming wrongful discharge has the burden of pleading and proving that he was dismissed and that his dismissal occurred for a reason that violates public policy. *See Salter v. E & J Healthcare, Inc.*, 155 N.C. App. 685, 693, 575 S.E.2d 46, 51 (2003). In the specific context of alleged retaliation, the plaintiff must show that "'(1) [he] engaged in a protected activity, (2) the employer took adverse action, and (3) there existed a causal connection between the protected activity and the adverse action.'" *Id.* (quoting *Brewer v. Cabarrus Plastics, Inc.*, 130 N.C. App. 681, 690, 504 S.E.2d 580, 586 (1998)). Where the claim is based on an employer's violation of the law, the courts look to see if the plaintiff has adequately shown that the alleged violations occurred. *Combs*, 690 S.E.2d at 723-25.

## II. ANALYSIS OF MOTION

### A. Overview of Dismissal Grounds

As indicated, the sole claim plaintiff purports to assert is for wrongful retaliatory discharge in violation of public policy. Defendant does not challenge the sufficiency with which plaintiff pleads the second element of his claim, that defendant took adverse action against him. As indicated, plaintiff expressly alleges that defendant terminated him. (Am. Compl. ¶ 50). The court finds plaintiff's pleading of the second element of his claim to be adequate.

Defendant does challenge the sufficiency of plaintiff's pleading of the first element—protection of his conduct under the public policy exception—and the third element—existence of a causal connection between his activity and his termination. The court will examine each of these elements in turn.

9

B.  **Protected Activity Element**

1.  **Basic Circumstances**

The activity that plaintiff alleges was protected from retaliation was his complaining about defendant's purported failure to properly supervise unlicensed personnel in violation of chapters 89A and 89C, including his making arrangements with the Board to meet with its attorney. Plaintiff's claim therefore arises from a set of basic circumstances to which the public policy exception has been found applicable. Specifically, the claim is based "on some activity by the employer contrary to law." *Combs*, 690 S.E.2d at 723.

To the extent that chapters 89A and 89C are deemed to constitute expressions of public policy within the meaning of the public policy exception, plaintiff's claim is also arguably based on "activity by the employer contrary to . . . public policy." *Id.* Chapter 89C appears by its express terms to state the public policy of North Carolina. A section in it entitled "Declarations; prohibitions" states: "In order to safeguard life, health, and property, and to promote the public welfare, the practice of engineering and the practice of land surveying in this State are hereby declared to be subject to regulation in the public interest." N.C. Gen. Stat. § 89C-2; *accord* 21 N.C. Admin. Code § 56.0701(b) ("The licensee shall conduct the practice in order to protect the public health, safety and welfare. The licensee shall at all times recognize the primary obligation to protect the public in the performance of the professional duties.").

Moreover, a violation of any provision of chapter 89A is a crime, specifically, a class 2 misdemeanor. *Id.* § 89C-23; *see also id.* § 89C-21(c) (providing for a civil penalty up to $5,000.00 for certain violations of the chapter). Further, the authority to enforce the provisions of the chapter extends broadly to "all duly constituted officers of the State and all political subdivisions of the

10

State." *Id.* While chapter 89A does not have all these attributes, it does make it a crime, also a class 2 misdemeanor, to practice landscape architecture or hold oneself out as a landscape architect without being registered under the chapter. *Id.* § 89A-8(a); *see also id.* § 89A-7(d) (providing for a civil penalty of up to $2,000.00 for any violations of the chapter).

It is true, as defendant notes, that neither chapter 89A nor chapter 89C contains a whistleblower provision that expressly protects a person against retaliation for complaining about suspected violations of these statutes. But that is only one of several potential bases for application of the public policy exception. It is sufficient, as indicated, if the claim is based on an employer's activity that otherwise violates the law or public policy.

### 2. Public Policy Considerations

Additionally, this case presents public policy considerations that have been deemed adequate to support a claim under the public policy exception. The considerations at issue relate to enforcement of the law. *Combs*, 690 S.E.2d at 723.

These considerations are implicated, in part, because plaintiff directed his complaints to those with responsibility for ensuring compliance with chapters 89A and 89C. One such group was, of course, defendant's management. *See, e.g.*, N.C. Gen. Stat. §§ 89A-2(a1), 89C-24. The management personnel to whom plaintiff complained included Lewis, director of the Design Studio (*see* Am. Compl. ¶¶ 6, 34, 36), and Steve Smith, defendant's president (*see id.* ¶¶ 46-48).[6] He also alleges complaining to defendant per se. (*See id.* ¶ 28). In addition, of course, plaintiff allegedly

---

[6] Plaintiff does not allege whether or not the two engineers to whom he repeatedly complained were in management. The court expresses no opinion on whether, if they were not in management, plaintiff's complaints to them would provide a basis for application of the public policy exception.

11

voiced his intention to report defendant's purported violations of chapter 89A to the Board, which he, in fact, later did. (*See id.* ¶¶ 46, 47, 49, 52).

An employer's discharge of an employee in retaliation for complaining to the employer about purported violations of chapters 89A and 89C manifestly undermines enforcement of the legal requirements established by these statutes. It does so by eliminating the complaining employee from the employer's company, providing other employees a strong disincentive to report violations, and, as a result, encouraging continuation of violations that are occurring.

Retaliatory discharge for threatening to report chapter 89A violations to the Board arguably represents an even greater threat to the enforcement of the law. It directly impedes the reporting of possible violations of that statute to the body charged with enforcing it.

### 3. Showing of Violations

Moreover, the amended complaint makes a plausible showing that the alleged violations occurred. Plaintiff lays the groundwork for the allegations of violation by alleging that defendant engages in services defined by chapter 89A as the practice of landscape architecture,[7] and by chapter 89C as the practice of engineering[8] and the practice of land surveying.[9] He goes on to allege specific types of landscape architecture, and engineering and land surveying services that defendant provided without the required direct supervision of the appropriate professional. These included meeting with clients and governmental authorities in preparing due diligence reports and otherwise (Am. Compl.

---

[7] *See* Am. Compl. ¶¶ 14 (paraphrasing N.C. Gen. Stat. § 89A-1(3)), 15 (same), 16 (paraphrasing N.C. Gen. Stat. § 89A-1(3)a-e).

[8] *See* Am. Compl. ¶ 12 (paraphrasing N.C. Gen. Stat. § 89C-3(6)a).

[9] *See* Am. Compl. ¶¶ 12 (paraphrasing N.C. Gen. Stat. § 89C-3(7)a.1, 2, 4, 7), 13 (paraphrasing N.C. Gen. Stat. § 89C-3(7)a.3).

¶ 9); preparation of maps, plats, records, and property descriptions based on surveys of subdivisions of land (*id.* ¶ 13); and preparation of plans and supervision of the execution of projects involving the arranging and use of land for public and private use and enjoyment (*id.* ¶ 15). These allegations are supplemented by allegations providing a recent history of the landscape architects serving with the Design Studio and indicating that the required supervision of the Design Studio's work by a licensed landscape architect was absent from at least May 2007. (*Id.* ¶¶ 6, 27, 28, 30). Plaintiff also specifies that the requisite direct supervision by a licensed engineer was lacking from at least October 2007. (*Id.* ¶¶ 30, 35). In addition, the amended complaint describes three specific projects in North Carolina in which specified landscape architecture and/or engineering and land surveying services were provided without the requisite direct professional supervision—the Landing at Lake Michael, Northeast Creek Apartments, and Isabella Cannon Neighborhood Park. (*Id.* ¶¶ 32, 42-44, 54-57).[10]

The amended complaint also makes it clear that the alleged violations were not merely technical infractions, but caused substantial actual harm to defendant's clients and others. The harm inflicted included provision of unusable and unprofessional work, project delays, and, for clients, excessive and unwarranted charges. (*Id.* ¶¶ 31, 37, 42, 66). In the case of the Northeast Creek Apartments, the amended complaint and an attached email detail the damages purportedly caused in part by defendant to the non-client land owner in the project, including loss of $30,000.00 and termination of the project. (*Id.* ¶ 42 & Ex. D). The land owner stated in its email to defendant that it had been "irreparably damaged." (*Id.* Ex. D).

---

[10] The amended complaint also describes a project by the Design Studio in Williamsburg, Virginia in which direct supervision by professionals was purportedly absent. (*See* Am. Compl. ¶¶ 39-40). In their memoranda, the parties did not address what, if any, effect the out-of-state status of this project would have on the applicability of chapters 89A and 89C and the public policy exception. Because the court finds that plaintiff's other allegations are sufficient to state a claim, it need not determine on the instant motion whether allegations regarding this out-of-state project provide further support for the claim. The court expresses no opinion on that issue.

Defendant contends that the amended complaint fails to adequately allege a violation of chapter 89A because the Board did not find defendant to have engaged in the practice of landscape architecture without direct supervision of a licensed landscape architect. But the letter from the Board did find defendant to have committed violations—failure to have a "current NC licensed architect of record listed for the firm" between September 2006 and August 2007, and failure to itself be licensed due to nonpayment of renewal fees from July 2007 until mid-May 2008, although the license was retroactively reinstated. (Board Ltr.). The letter also warned defendant to notify the Board timely of changes in the designated landscape architect for defendant and to make timely license renewals. (*Id.*).

More significantly, though, the letter contains no affirmative finding that defendant committed no other violations of chapter 89A or even that its investigation had ended. Nor does the letter specify the scope of the investigation the Board undertook. All such ambiguities are resolved in plaintiff's favor. And, of course, the letter addressed solely violations of chapter 89A, not violations of chapter 89C, because of the limitation of the Board's jurisdiction to administration and enforcement of chapter 89A. *See* N.C. Gen. Stat. § 89A-3.1(1).

Even if the letter had unambiguously exonerated defendant from any of the violations alleged by plaintiff, it would not be entitled to the preclusive effect defendant advocates. Defendant has cited no authority for the proposition that determinations by a state licensing agency conclusively establish the matters determined for purposes of a pleading in federal court.

Moreover, plaintiff has pled facts challenging the accuracy of the information upon which the Board relied. Specifically, plaintiff alleges that an employee of defendant, Kenneth R. Dodson, submitted a letter to the Board dated 24 September 2008 in response to plaintiff's complaint stating

14

that, as an unlicensed employee, "'[a]ll design services I have rendered while in the employment of [defendant] have been directly supervised by either licensed Landscape Architects and/or licensed Engineers.'" (Am. Compl. ¶ 53). A copy of the letter is attached to the amended complaint. (*See* Dodson Ltr. (D.E. 11-1 at p. 12)). Plaintiff then impeaches this contention with allegations that Dodson was not directly supervised by a licensed professional when he participated in several meetings of the committee planning the Isabella Cannon Neighborhood Park. (Am. Compl. ¶ 54). Three meetings preceded the date of his letter (*i.e.*, 12 August, 19 August, and 16 September 2008) and two followed it (*i.e.*, 30 September and 14 October 2008). (*Id.* ¶¶ 55, 56). The purported minutes of the meeting showing Dodson's participation are attached to the amended complaint. (Minutes (D.E. 11-1 at pp. 13-26)).

4. **Case Law**

Defendant relies on *Considine v. Compass Group USA, Inc.*, 145 N.C. App. 314, 551 S.E.2d 179, *aff'd per curiam*, 354 N.C. 568, 557 S.E.2d 528 (2001), in which the appellate court upheld dismissal of plaintiff's complaint for failure to state a claim for wrongful discharge under the public policy exception. But there, the dismissal was based on plaintiff's failure to allege any explicit statutory or constitutional provision violated by defendant or any specific violative conduct by defendant. 145 N.C. App. at 321, 551 S.E.2d at 184. Here, as seen, plaintiff alleged in detail the statutory provisions purportedly violated and the conduct by defendant that violated them.

Defendant also relies on *Whiting v. Wolfson Casing Corp.*, 173 N.C. App. 218, 618 S.E.2d 750 (2005), another case upholding dismissal of the plaintiff's claim for wrongful discharge under the public policy exception for failure to state a claim. In that case, the plaintiff alleged that she had been discharged in retaliation for asserting her rights under the Workers' Compensation Act, N.C.

Gen. Stat. §§ 97-1, et seq. Retaliation for assertion of rights under the Workers' Compensation Act is prohibited by the Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-241(a)(1)a and also comes within the public policy exception. *See* 173 N.C. App. at 222, 618 S.E.2d at 753. The appellate court found, however, that because the plaintiff did not allege that she filed a workers' compensation claim, but simply requested that her employer pay for a medical evaluation of a work-related injury, she had not asserted her rights under the Workers' Compensation Act. *Id.* at 222-23, 618 S.E.2d at 753-54. Therefore, the court concluded, she had failed to plead that she engaged in a legally protected activity within the REDA or the public policy exception. *Id.* In the instant case, of course, for the reasons discussed, plaintiff did adequately plead that he engaged in an activity protected under the public policy exception.

Rather, a more relevant precedent is the Court of Appeals decision in *Combs*, 690 S.E.2d 719. There, plaintiff employee of defendant power company was terminated after complaining to management that certain of its billing practices constituted the North Carolina crime of obtaining property by false pretenses under N.C. Gen. Stat. § 14-100. 690 S.E.2d at 723. As here, there was no whistleblower statute that expressly prohibited retaliation for reporting such misconduct. The trial court entered a directed verdict dismissing plaintiff's wrongful discharge claim under the public policy exception. The appellate court reversed, finding under the applicable review standard (*i.e.*, more than a scintilla of evidence) that there was sufficient evidence to support the claim. Similarly here, there are sufficient allegations in the amended complaint to make a plausible showing that defendant violated chapters 89A and 89C. For this and the other reasons discussed, plaintiff has adequately pled that he satisfies the first element of his retaliation claim—that he engaged in protected activity within the scope of the public policy exception.

16

## C. Causation Element

As indicated, defendant also challenges the sufficiency with which plaintiff pleads the third element of his retaliation claim—that his complaints about violation of chapters 89A and 89C caused his termination. Defendant argues that the delay between the time when plaintiff first began complaining and his termination about five months later negates causation. Defendant's argument is meritless.

Plaintiff's termination came only two days after he, for the first time, threatened to report defendant's purported chapter 89A violations to the Board. The termination itself came the very morning of, indeed, immediately prior to, his scheduled 9:30 a.m. meeting with the Board's attorney. (Am. Compl. 45, 50). Plaintiff's prior history of complaints about defendant's purported chapter 89A and 89C violations tended to give credence to his threat to report the chapter 89A violations to the Board. That threat, in turn, tended to enhance the likelihood that he would also report the chapter 89C violations to authorities. Based on the allegations of the amended complaint, the stated basis for plaintiff's discharge, lack of work for plaintiff, was a pretext because he purportedly had ample work assignments from defendant, and it began advertising for a landscape architect for its Cary office right after plaintiff's discharge. (*Id.* ¶¶ 50, 51).

Finding that plaintiff has adequately pled satisfaction of this third and final element of his retaliation claim, the court concludes that he adequately states a claim for retaliation within the public policy exception. Defendant's motion to dismiss it should accordingly be denied.

## DEFENDANT'S MOTION TO STAY

As indicated, defendant has also moved to stay discovery pending ruling on its dismissal motion. The motion is moot as to the period that has elapsed since the filing of the motion.

Prospectively, defendant has failed to demonstrate an adequate basis for a stay because its dismissal motion lacks merit. Defendant's motion to stay will accordingly be DENIED in part as moot and in part on the merits.

## PLAINTIFF'S MOTION TO COMPEL

By his motion to compel, plaintiff seeks an order directing defendant to supplement its initial disclosures and to respond to the set of production requests (D.E. 26-5) he has served on defendant. Plaintiff's motion fails to contain the certifications required by Fed. R. Civ. P. 37(a)(1) and Local Civil Rule 7.1(c), E.D.N.C. that plaintiff's counsel has conferred in good faith with opposing counsel to resolve the disputes alleged. Although plaintiff does present a chronology of his contacts with defense counsel concerning discovery along with related correspondence, none of the communications were with defendant's current counsel, who entered their appearance (on 8 September 2010) over two weeks before plaintiff filed his motion (on 24 September 2010). (*See* Notice of Substitution of Counsel (D.E. 25)). In addition, there is no indication that plaintiff addressed with defendant the alleged deficiencies in defendant's initial disclosures before filing his motion. For their part, defendant's current counsel state in their response to plaintiff's motion that *they* contacted plaintiff's counsel and are willing to supplement the initial disclosures. Plaintiff has therefore failed to show that court intervention is needed to resolve his purported disputes with defendant over discovery. Plaintiff's motion to compel will therefore be denied.

The filings on plaintiff's motion indicate that there has been essentially no discovery undertaken in this case since entry of the current Scheduling Order (D.E. 18) on 21 April 2010. It therefore appears appropriate that counsel for the parties confer and consider the possible need to request updating of the Scheduling Order. The court will accordingly order that they do so.

## CONCLUSION

For the foregoing reasons:

1. IT IS RECOMMENDED that defendant's motion to dismiss (D.E. 11) be DENIED; and

2. IT IS ORDERED that:

   a. defendant's motion to stay discovery (D.E. 20) is DENIED in part as moot and in part on the merits;

   b. plaintiff's motion to compel (D.E. 26) is DENIED; and

   c. no later than 14 days after entry of the Order on this Memorandum and Recommendation, the parties shall confer about the possible need to update the Scheduling Order, as well as the issues underlying plaintiff's motion to compel, and shall file a report on their conference, which shall include any proposals for changes in the Scheduling Order.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days, or such other period as the court specifies, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

SO ORDERED, this 24 day of October 2010.

James E. Gates
United States Magistrate Judge